❒ Original      ❒ Dup

CLERK'S OFFICE
A TRUE COPY
Feb 17, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| a black Motorola (Device), as further described in Attachment A | ) ) ) ) |

Case No.      26-MJ-33

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____03/03/2026_____ *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____.

Date and time issued:      02/17/2026 at 10:15 a.m.

*William E. Duffin*
*Judge's signature*

City and state:   Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to be Search

The property to be searched is the cellphone recovered from RYAN A. MUELLER, on February 2, 2026 during his arrest at 3320 Business Dr, Sheboygan, WI, more fully described as the following, hereinafter referred as the "**Device**":

    a)  a black Motorola[3].

The **Device** is currently located at the Federal Bureau of Investigation-Milwaukee HQ in St. Francis, Wisconsin.

The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

---

[3] The cellphone bears no model markings nor external IMEI indicators. The cellphone is currently secured in evidence at the FBI-Milwaukee HQ under case 281D-MW-4116870, item# 1B13.

# ATTACHMENT B

## Particular Things to be Seized

All records on the **Device** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance) involving RYAN A. MUELLER since November 1, 2025 including:

    a.   Preparatory steps taken in furtherance of this crime;

    b.   Any audio, video, and/or photograph(s) files on the phone of the above criminal activity or of evidentiary value;

    c.   All voicemail and call records;

    d.   All text messages and call history;

    e.   Contact list, to include names, addresses, phone numbers, and/or email addresses;

    f.   All social media sites used and applications for social media sites;

    g.   Lists of customers and related identifying information;

    h.   Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    i.   Types, quantities, and prices of firearms possessed;

    j.   Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and,

    k.   All bank records, checks, credit card bills, account information, and other financial records.

    l.   All internet activity;

    m.   All location data including from the phone and/or from any downloaded applications;

2.      Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a.  records of Internet Protocol addresses used;

b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic form, and/or any memory card or other data storage device within or connected to the **Device**.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

CLERK'S OFFICE
A TRUE COPY
Feb 17, 2026
/s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )       Case No.    26-MJ-33
)
a black Motorola (Device), as further described  )
in Attachment A  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 846, 856; and 843(b); | Distribution/possession with intent to distribute controlled substances; conspiracy to do the same; maintain drug involved premises; use of a communication facility in furtherance of a drug trafficking offense |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 06/12/2026 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI TFO Kristian P. Perales
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  02/17/2026          _____
*Judge's signature*

City and state:  Milwaukee, WI          Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kristian P. Perales, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a state certified law enforcement officer employed as a Master Trooper with the Wisconsin State Patrol (WSP) and have been a sworn officer in the State of Wisconsin for over 22 years.  I am also currently a federally deputized task force officer for the Federal Bureau of Investigation's (FBI) Milwaukee Area Safe Streets Task Force (MASSTF).  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, U.S.C., in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.     The MASSTF is an investigative arm of the FBI and is charged under Title 18, U.S.C., with the enforcement of laws governing possession of methamphetamine, distribution of methamphetamine and conspiracy to distribute methamphetamine and narcotics trafficking.

4.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, U.S.C., §§ 841(a)(1), 843(b) and 846, and Title 18, U.S.C., §§ 1956 and 1957, and other related offenses.  I received formal training and participated in numerous complex drug trafficking

investigations, including ones using wiretaps. More specifically, my training and experience includes, but is not limited to, the following:

a. I have utilized informants to investigate drug trafficking. Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment, including wireless and land line telephones, to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

2

5.      Based on my training and experience, I know conversations of narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through conventional voice and text messages. I am also familiar with many of the methods used by individuals who attempt to use cellular telephones to illegally distribute controlled substances.

6.      Additionally, I have received training related to the investigations and enforcement of drug trafficking laws. As a result of this training and my experience, I am familiar with the technologies of drug traffickers. I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations. I know drug traffickers often use electronic devices, such as cellular devices, to generate, transfer, count, record, or store the information described above and conduct drug trafficking. I am familiar with computers, cellular devices, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. I know that drug traffickers often keep documents and records about the transportation, sourcing, ordering, sale, and distribution of controlled substances. These documents and records and additionally receipts, notes, ledgers, and other documents regarding drug trafficking are often maintained where the traffickers have ready access. These may be stored computers, cellular devices, and other electronic media or electronic storage devices. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or

electronic storage devices. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

7.     I am familiar with the language used over the telephone and other electronic communications to discuss sex and drug trafficking and know that the language is often limited, guarded, and coded. I am familiar with various code names used to describe controlled substances, as well as various code words used to describe commercial sex acts. I also know that drug traffickers and sex traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as e-mail and messaging services), and social media to facilitate these crimes.

8.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.     I am currently participating in an investigation of possession of methamphetamine, distribution of methamphetamine and conspiracy to distribute methamphetamine, in violation of

Title 21, U.S.C., §§ Sections 841 and 846, involving RYAN A. MUELLER and others not yet identified. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers; (c) information obtained from confidential sources; (d) controlled buys; (e) documentary evidence; (f) physical and electronic surveillance, and (g) physical seizures.

10.     Based on the information described below, I believe there is probable cause that MUELLER has violated Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance) and that evidence of this crime can be found in the **Device** as described in Attachment A. The particular evidence to be seized from the **Device** is described in Attachment B.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

11.     The property to be searched is the cellphone recovered from RYAN A. MUELLER, on February 2, 2026 during his arrest at 3320 S. Business Dr, Sheboygan, WI by the Sheboygan County Sheriff's Office, more fully described as the following, hereinafter referred as the "**Device**":

a)   a black Motorola[1].

The **Device** is currently located at the Federal Bureau of Investigation-Milwaukee HQ in St. Francis, Wisconsin.

---

[1] The cellphone bears no model markings nor external IMEI indicators. The cellphone is currently secured in evidence at the FBI-Milwaukee HQ under case 281D-MW-4116870, item# 1B13.

12.     The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## II.     PROBABLE CAUSE

13.     The MASSTF and local law enforcement have been investigating MUELLER and unidentified persons involved with a drug trafficking. Since approximately December 6, 2025, MUELLER and unidentified persons have been transporting methamphetamines through numerous counties of Wisconsin including, Milwaukee County and Sheboygan County. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information gathered from other law enforcement source; a controlled drug evidence purchase; recorded telephone calls with MUELLER; controlled payments of money, and physical surveillance.

14.     As part of the investigation, case agents were made aware that MUELLER, who is located in Sheboygan, Wisconsin obtains controlled substances from a supplier in Milwaukee, Wisconsin, and then distributes within various counties in Wisconsin. MUELLER uses conventional cellular telephone text messaging and voice calls to distribute narcotics.

### A.  Criminal History

15.     On February 4, 2026, case agents queried law enforcement databases regarding MUELLER's criminal history.  The following is a summary and not a complete list.   MUELLER has the following criminal arrests:

a)  April 25, 1996 arrest by Sheboygan Police Department for disorderly conduct and resisting arrest;
b)  August 19, 1996 arrest by Sheboygan Police Department for burglary;
c)  January 3, 1998 arrest by Sheboygan Police Department for a probation violation;
d)  May 18, 1998 arrest by Plymouth Police Department for criminal trespass to dwelling;

e) October 21, 1998 arrest by Sheboygan County Sheriff for manufacture/deliver schedule IV drugs;

f) August 22, 2005 arrest by Sheboygan Police Department for robbery;

g) May 13, 2006 arrest by Sheboygan Falls Police Department for disorderly conduct, battery, criminal damage to property, false imprisonment, and child abuse-intentionally cause harm;

h) June 4, 2006 arrest by Sheboygan County Sheriff for operate while intoxicated, false imprisonment, disorderly conduct, criminal damage to property, battery, and child abuse-intentionally cause harm;

i) June 26, 2006 arrest by Sheboygan County Sheriff for burglary, receiving stolen property and theft;

j) July 11, 2006 arrest by Sheboygan County Sheriff for bail jumping;

k) July 13, 2006 arrest by Sheboygan County Sheriff for receiving stolen property;

l) September 10, 2007 arrest by Sheboygan County Sheriff for burglary, possession of burglarious tools, criminal damage to property, and theft;

m) November 12, 2007 arrest by Sheboygan Police Department for burglary;

n) January 2, 2008 arrest by Sheboygan County Sheriff for burglary,

o) February 27, 2013 arrest by Sheboygan Police Department for burglary;

p) April 29, 2020 arrest by Sheboygan Police Department for possess drug paraphernalia, hit and run, and operating while under the influence; and

q) November 2, 2022 arrest by Sheboygan Police Department for possess with intent-amphetamine, possess amphetamine/LSD/Psilocin, possess drug paraphernalia, bail jumping-felony, resisting or obstructing an officer, possession of narcotic drugs, operating while under the influence, possess with intent-fentanyl.

**B. Controlled Drug Buy – January 21, 2026**

16.     As part of the investigation into MUELLER, case agents have used a Confidential Human Source ("CHS").  CHS has contacted or was contacted by a person called "Tat", later identified by case agents and confirmed by CHS as MUELLER, to conduct the purchase of methamphetamine using telephone number 920-635-1150. CHS received a price for the requested amount of methamphetamine and a meeting location for the delivery of methamphetamine from MUELLER during these contacts.

17.     CHS's information is credible and reliable because CHS has given information

concerning individuals involved in illegal activities. CHS's information has been independently verified through this investigation, including through controlled drug buys, queries of law enforcement databases, and surveillance. CHS has made statements against his/her penal interest. CHS has a past criminal history including arrest and convictions for Possession of Illegal Articles, Possession of Cocaine, Heroin and THC with Intent to Deliver, Manufacture and Deliver Cocaine, and possession of a firearm by a felon. CHS is cooperating with law enforcement in exchange for consideration on a federal felony drug and firearm possession charges.

18.     During the below controlled buy of methamphetamine, the CHS placed a phone call to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, debriefed after the controlled purchase and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substance was weighed and tested positive for methamphetamine.

19.     On January 21, 2026, CHS set up a controlled buy of methamphetamine from MUELLER using telephone number 920-635-1150. MUELLER and CHS agreed to meet in the vicinity of West Hampton Avenue and N 52nd Street, Milwaukee, Wisconsin. CHS drove to the location and met with MUELLER. After the transaction, CHS met with case agents and turned over the suspected methamphetamine. The suspected methamphetamine was tested with Mobile Detect Pouch Meth/MDMA test kit, which returned positive results. The weight of the methamphetamine was 113.07 grams.

20.     On January 23, 2026, case agents provided a photograph of MUELLER retrieved from law enforcement databases to CHS. CHS was able to identify MUELLER as the individual who sold CHS methamphetamine during the aforementioned controlled buy. Case agents reviewed

the video; however, the video footage was very dark and made it difficult to observe MUELLER.

### C. Arrest of MUELLER

21.    On February 2, 2026, case agents were informed by Sheboygan Sheriff's department that sheriffs had taken MUELLER into custody pursuant to a lawful traffic stop. As a result of the traffic stop, a small amount of methamphetamine was recovered from MUELLER. Law enforcement also located MUELLER's cellphone, a black Motorola cellphone[2] (**Device**), during the traffic stop.  The Device was located in MUELLER'S vehicle during the search incident to a lawful arrest.    The **Device** was subsequently transferred to case agents' custody and placed in property at Federal Bureau of Investigation-Milwaukee HQ in St. Francis, Wisconsin.

22.    On February 4, 2026, case agents placed a controlled call to MUELLER's telephone number 920-635-1150, which confirmed that the **Device** taken from MUELLER during the February 2, 2026 traffic stop was the same **Device** that MUELLER used to contact CHS for the controlled drug buy on January 21, 2026.

23.    Case agents believe the **Device** that was taken from MUELLER, continues to contain valuable information that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances; conspiracy to distribute and possess with the intent to distribute controlled substances; and use of a communication facility to facilitate a drug trafficking offense, in violation of Title 21, United States Code, Sections 841, 843 and 846.

24.    Through affiant's training, experience, and discussions with other experienced law enforcement officers, affiant is familiar with the ways in which drug traffickers conduct their unlawful trade, including their methods of distribution, their use of communication devices, their use of coded communications to conduct their transactions, the employment of counter

---

[2] The cellphone bears no model markings nor external IMEI indicators. The cellphone is currently secured in evidence at the FBI-Milwaukee HQ under case 281D-MW-4116870, item# 1B13.

surveillance, their use of false or fictitious identities, and their use of various forms of electronic devices to store and/or conceal illegal activity.

25.     Based upon my training and experience, affiant knows that individuals involved in drug trafficking frequently use cellular telephones to maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances.   Affiant has also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs.

26.     Based on my training and experience, affiant is aware that individuals involved in trafficking controlled often possess multiple cellular devices to compartmentalize their illegal activity and to avoid law enforcement detection.

27.     Based upon my training and experience, affiant believes it is common for crime suspects who possess illegal controlled substances to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and proceeds of drug trafficking.   Furthermore, affiant believes it is common for these photographs and visual depictions to be kept and maintained on their cellular devices.

28.     Based upon the facts described above, to include (1) my knowledge of and experience confirming the prolific use of electronic devices to facilitate the possession and trafficking of controlled substances; (2) MUELLER's previous drug dealing activities; and (3) one cellular phone was recovered from MUELLER's person, there is probable cause to believe that a search of the information contained within the above described the **Device** will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances. I am requesting records dating back to November 1, 2025.

## **TECHNICAL TERMS**

29.     Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.     Cellular telephone:  A cellular telephone is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system (GPS) technology for determining the location of the device.

      b.     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.

Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (GPS) consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by

radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.　PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system (GPS) technology for determining the location of the device.

f.　Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like

programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h.  IP Address: An Internet Protocol address (IP address) is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14

30.     Based on my training, experience, and research, I know that the **Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and all have the ability to access the internet.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

32.     As explained below, information stored within a cellular phone (cell phone) may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored within a cell phone can indicate who has used or controlled the cell phone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, contacts lists, instant messaging logs, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the cell phone at a relevant time.  Further, such stored electronic data can show how and when the cell phone and its related account were accessed or used.  Such "timeline" information allows investigators to understand the chronological context of cell phone access, use, and events relating to the crime under investigation.  This "timeline" information may tend to either inculpate or exculpate the cell phone account owner.  Additionally, information stored

within a cell phone may indicate the geographic location of the cell phone and user at a particular time (e.g., location integrated into an image or video sent via email or text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the cell phone owner's state of mind as it relates to the offense under investigation. For example, information in the cell phone may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement). Unless this data is destroyed, by breaking the cell phone itself or by a program that deletes or over-writes the data contained within the cell phone, such data will remain stored within the cell phone indefinitely.

33. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Device** because:

    a)     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b)     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

35.     Based on the above information provided in this affidavit, I believe there is probable cause that the **Device** possessed by RYAN A. MUELLER on his person on February 2, 2026 contains evidence of MUELLER and others violations of Title 21, United States Code,

Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance).

## ATTACHMENT A

### Property to be Search

The property to be searched is the cellphone recovered from RYAN A. MUELLER, on February 2, 2026 during his arrest at 3320 Business Dr, Sheboygan, WI, more fully described as the following, hereinafter referred as the "**Device**":

      a) a black Motorola[3].

The **Device** is currently located at the Federal Bureau of Investigation-Milwaukee HQ in St. Francis, Wisconsin.

The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

---

[3] The cellphone bears no model markings nor external IMEI indicators. The cellphone is currently secured in evidence at the FBI-Milwaukee HQ under case 281D-MW-4116870, item# 1B13.

**ATTACHMENT B**

**Particular Things to be Seized**

All records on the **Device** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance) involving RYAN A. MUELLER since November 1, 2025 including:

a. Preparatory steps taken in furtherance of this crime;

b. Any audio, video, and/or photograph(s) files on the phone of the above criminal activity or of evidentiary value;

c. All voicemail and call records;

d. All text messages and call history;

e. Contact list, to include names, addresses, phone numbers, and/or email addresses;

f. All social media sites used and applications for social media sites;

g. Lists of customers and related identifying information;

h. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

i. Types, quantities, and prices of firearms possessed;

j. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and,

k. All bank records, checks, credit card bills, account information, and other financial records.

l. All internet activity;

m. All location data including from the phone and/or from any downloaded applications;

2. Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic form, and/or any memory card or other data storage device within or connected to the **Device**.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.